KITCHENS, Justice,
dissenting:
¶21. The majority holds that, because Mobility is not an insurance carrier, the sales tax imposed upon its proceeds is not preempted by the Federal Employees Health Benefits Act (FEHBA). And, since nothing in the FEHBA specifically requires Mobility to pass costs to the fund, then there is no conflict between the federal law and the state sales tax. In my view, however, it is clear that some of the cost created by Mississippi’s sales tax on medical equipment sold by Mobility inevitably will reach the fund. This is an eventuality that the FEHBA was created to prevent. Therefore, I respectfully dissent.
¶ 22. The FEHBA provides that “[n]o tax, fee, or other monetary payment may be imposed, directly or indirectly, on a carrier or an underwriting or plan administration subcontractor ... with respect to any payment made from the Fund.” 5 U.S.C. § 8909(f)(1) (2006). The Office of Personnel Management (OPM), which manages the fund, has determined that this language should be interpreted broadly. 48 C.F.R. § 1631.205-41 (2011). The prohibition applies to any tax, fee, or monetary payment directly or indirectly imposed on FEHBP premiums. Id. The regulation provides that payments prohibited under the section include “all payments directed by States or municipalities, regardless of how they may be titled, to whom they must be paid, or the purpose for which they are collected....” Id. This language makes it abundantly clear that, although Mobility is not an insurance carrier, an underwriter, or a plan administration subcontractor, the sales tax in question creates an expenditure that will indirectly increase the costs of insurance carriers purchasing equipment from Mobility, and ultimately will increase the amount of reimbursement from the fund. This is in direct conflict with the purposes and provisions of the FEHBA.
¶23. The majority goes further and argues that the tax is imposed on Mobility and not on its customers. Therefore, the majority reasons, Mobility simply can pay the sales tax out of its own pocket. Or, the insurance carrier can pay the sales tax and not ask for reimbursement from the fund. Or, the insured can pay the sales tax. I disagree for several reasons. First, forcing Mobility to remit the sales tax itself would discourage Mobility from selling medical equipment to insureds covered under the FEHBA. It would cost Mobility more money to sell to federal employees than to other customers. This runs counter to the clear intent of the FEHBA, which is to provide economical health care solutions to federal employees. Further, insurance companies will have no incentive to pay a sales tax for which they know they will not be reimbursed. It is likely that the insured will have to foot the bill.
¶24. Additionally, the majority says that Mobility is arguing “that the FEHBA precludes any state tax which may cause an increase in costs for the fund.” Maj. Op. ¶ 8. However, the assessments at issue already have been paid under protest by Mobility. The chancery court did not address whether any of the assessments ultimately were reimbursed from the fund. It is entirely possible that the sales tax on the sale of certain medical equipment has been reimbursed from the fund. But we do not know, because the chancery court did not make that determination. I would remand to the chancery court for a determination of whether any of the challenged assessments have been reimbursed from the fund.
*1007 ¶ 25. It is true, as the majority notes, that Mobility, the insurance carrier, or the insured can pay the sales tax -without seeking reimbursement from the fund. However, in the narrow range of cases in which sales tax on durable medical equipment is paid for by insurance carriers and actually is reimbursed by the fund, I believe the plain language of Section 8909(f) of the FEHBA and the OPM’s interpretation of the FEHBA clearly provide that collection of the state sales tax has been preempted by federal law. The majority professes that I conclude that preemption is appropriate where the tax might be passed along to the fund. With respect, I conclude no such thing. What I do conclude is that, where the cost of the sales tax on durable medical equipment sold to insureds under the FEHBA actually is borne by the fund, then the sales tax is preempted by the supreme law of the land: federal law. If a particular transaction is one in which the sales tax affects the fund, then Mississippi’s sales tax is preempted. It should be simple enough to determine whether the sales tax in question ultimately will be borne by the fund when a sale is made. If the sales tax does not affect the fund, then Mississippi may collect it with impunity.
¶26. The majority’s analogy that, under this logic, various other state taxes on Mobility are the same kind of indirect taxes as the sales tax in question is simply incorrect. Sales taxes, by definition, always are indirect taxes on the consumer. When a Mississippian purchases a cheeseburger, he or she pays more than the listed price because the consumer must pay the sales tax that the cheeseburger vendor is required to remit to the state. Similarly, when an insurer purchases medical equipment from Mobility, it pays more than the price of the equipment because it is covering Mobility’s sales tax. This is an indirect tax on the insurance carrier, since the carrier, in effect, is charged for the sales tax that Mobility is required to remit to the state for that sale. The other kinds of taxes mentioned by the majority are in no-wise similarly indirect upon the insurance company purchasing the medical equipment. If the additional sales tax payment ultimately is borne by the fund, then it is obvious that the sales tax in that transaction is preempted by federal law. Any such tax that Mobility was assessed which ultimately was borne by the fund should be refunded. This case should be remanded to the chancery court to make that determination. Accordingly, I respectfully dissent.
WALLER, C.J., PIERCE AND KING, JJ., JOIN THIS OPINION.